The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN HEINZ individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and DOES 1 to 10, inclusive, and each of them,<br><br>Defendants. | No. 2:24-cv-00714-RSM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AMAZON.COM, INC'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: November 22, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

A. Heinz's Claims ........ 3

B. Procedural History ........ 4

III. AMAZON'S MOTION TO DISMISS SHOULD BE DENIED ........ 5

A. Plaintiff Sufficiently Alleged Privacy and Financial Injuries ........ 5

1. Plaintiff has Adequately Pled Economic Injuries Sufficient to Support Claims under both the WPA and CPA ........ 5

2. Amazon's Argument that Plaintiff Failed to Allege Injury Under the WPA Ignores Applicable Authority and the Allegations of the Complaint ........ 8

3. Amazon is Precluded from Raising the Argument Over the "Actual Injury Requirement" ........ 9

B. Plaintiff Adequately Raised Allegations Regarding the Private Nature of the Communications at Issue ........ 10

C. Amazon Misstates the WPA Requirements of "Two or More Individuals", Which Plaintiff Met ........ 14

D. Plaintiff Sufficiently Pled Lack of Consent Under Both the WPA and CPA ........ 16

F. Heinz's CPA Claims Are Well-Pled and Sufficient to at the Pleadings Stage ........ 18

IV. CONCLUSION ........ 20

TABLE OF AUTHORITIES

**CASES**

*O'Hara v. Teamsters Local 856*, No. C 92-1262 FMS, 1997 WL 1025517 (N.D. Cal., Feb. 24, 1997) ..... 10

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..... 18

*Britton v. Co-op Banking Group*, 4 F.3d 42 (9th Cir. 1993) ..... 9, 10

*Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .. 7

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 7

*Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116 (W.D. Wash. 2012) ..... 15

*Gen. Signal Corp v. MCI Telecomms. Corp.*, 66 F3d 1500 (9th Cir. 1995) ..... 9

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ..... 9, 10

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986) ...... 5,6, 18

*Heinz v. Amazon.com, Inc.*, No. 2:23-CV-00282 WBS AC, 2023 WL 4466904 (E.D. Cal. July 11, 2023) ..... 10

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..... 15

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 17, 2016) ..... 7

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..... 6, 8, 15

*In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...... 17

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020) 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..... 7

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59 (2007) ..... 20

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) ..... 8, 9

*Kadoranian by Peach v. Bellingham Police Dep't*, 119 Wn.2d 178 (1992) ..... 13

*Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743 (N.D. Cal. 2022) ..... 6

*Klem v. Wash. Mut. Bank*, 176 Wn.2d 771 (2013) ..... 19

*Kotok v. Homecomings Fin., LLC*, 2009 WL 2057046 (W.D. Wash. July 14, 2009) .................. 20
*Mason v. Mortgage America, Inc.*, 114 Wn. 2d 842 (1990) ........................................................ 6
*McKee v. Gen. Motors Co.*, 601 F. Supp. 3d 901 (W.D. Wash. 2022)...................................... 8, 9
*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ................................................ 18
*Panag v. Farmers Ins. Co. of Washington* , 166 Wash.2d 27 (2009) ........................................... 6
*Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023)..... 7
*Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................................................................................................ 7
*Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104 (2001) ............................................ 19
*Saeedy v. Microsoft Corp.*, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)............................... 7
*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......................................................... 18
*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553 (1992) ........................ 5
*State v. Christensen*, 153 Wash. 2d 186 (2004) ................................................................ 2, 12, 14
*State v. Clark*, 129 Wn.2d 211 (1996) ...................................................................................... 13
*State v. Faford*, 128 Wash. 2d 476 (1996)........................................................................ 11, 12, 13
*State v. Hinton*, 179 Wash. 2d 862 (2014).......................................................................... 12, 13
*State v. Miles*, 160 Wash. 2d 236 (2007) .................................................................................. 12
*State v. Modica*, 164 Wash. 2d 83 (2008)................................................................................ 12
*State v. Roden,* 179 Wn.2d 893 (2014) ........................................................................ 2, 12, 13, 15
*State v. Townsend*, 147 Wn.2d 666 (2002) ...................................................................... 11, 16
*Tallmadge v. Aurora Chrysler Plymouth*, 25 Wn. App. 90 (1979) ............................................... 6
*Testo v. Russ Dunmire Oldsmobile*, 16 Wn. App. 39 (1976)........................................................ 8

**STATUTES**

Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86......................... *passim*
Washington Privacy Act ("WPA"), Wash. Rev. Code §§ 9.73.030 *et seq*. ........................... *passim*
Wash. Rev. Code 19.86.020...................................................................................................... 19
Wash. Rev. Code 9.73.030(1)(a) ........................................................................................... 13, 14

Wash. Rev. Code § 9.73.060 ........ 8
Wash. Rev. Code 9.73.030(3) ........ 16

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15 ........ 20

Plaintiff Brian Heinz ("Heinz" or "Plaintiff") submits this opposition to Defendant Amazon.com, Inc.'s ("Defendant" or "Amazon") renewed Motion to dismiss (ECF No. 16) ("Mtn."). The declaration of Craig W. Straub ("Straub Decl.") in support of this opposition is concurrently filed.

## I. INTRODUCTION

Heinz filed the instant lawsuit to remedy Amazon's monetization of data derived from recording its customers live conversations that occur on its website's live chat function, as well as to compensate consumers affected by such practice. Amazon mines this conversational "live chat" data because there is big money to be made—the information is "a treasure trove of conversational data—chat history and context—that businesses can begin to use and gain . . . *It's the juiciest of low-hanging fruit*." ECF No. 1 ("Compl.") at ¶ 10. With chat features and recent advances in technology like artificial intelligence being used at a startling rate, protecting consumer privacy is essential to ensure privacy protection laws are not eroded.

In an attempt to sidestep the legal obligations imposed by the Washington Privacy Act ("WPA"), Wash. Rev. Code §§ 9.73.030 *et seq*., and the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86, Amazon argues Washington law allows it to freely take the secretly recorded data so this action should be dismissed. Amazon's motion misconstrues the factual allegations[1] and applicable law. Plaintiff has sufficiently alleged that Amazon unlawfully recorded his private communications without consent, resulting in injuries recognized under Washington law.

First, Plaintiff alleges that Amazon's undisclosed recording practices deprived him of the

[1] Amazon takes the position that Heinz's allegations are "cookie cutter" and it should be able to freely take conversational data to data mine without its customers' consent. Heinz's Complaint is not "cookie cutter." It contains detailed allegations about the laws at issue including legislative background (Compl., ¶¶ 2-3, 14, 46-47), Amazon's practices at issue (*id.*, ¶¶ 11-13, 16-17, 20, 48), the details of Heinz's conversations as well as the subjective and objective facts regarding why consumers do not "consent" to Amazon secretly stealing their private conversational data (*id.*, ¶¶ 2-3, 9-10, 39, 47, 49, 57-58), proof that many of Amazon's competitors do not engage in the secret recordings of online chats (*id.*, ¶¶ 23-26), and cites published research finding the there is a "wealth of data in live chat systems" which allows companies like Amazon to perform detailed analysis of that data for financial gain (*id.*, ¶¶ 18-19).

economic value of his personal data and influenced his purchasing decisions. *See e.g.,* Compl., ¶ 53 (listing market prices for online data). Personal data is a valuable commodity in today's digital economy, and its unauthorized collection and use constitutes injury under the WPA and CPA. Moreover, had Heinz been aware of Amazon's invasive practices, he would not have made certain purchases, demonstrating a causal link between Amazon's deceptive conduct and his loss.

Next, Amazon argues that communications with chat bots do not involve "two or more individuals" under the WPA. This is unavailing. Washington law focuses on the privacy expectations of the individual communicating, not solely on the nature of the recipient. Washington courts have extended privacy protections under the WPA "[i]n the context of new communications technology." *State v. Roden,* 179 Wn.2d 893, 899-900 (2014). Washington privacy laws must be interpretable broadly to encompass technological changes because they have a "long-standing tradition of affording great protection to individual privacy." *State v. Christensen*, 153 Wash. 2d 186, 200 (2004). Amazon should not be allowed to both profit from the use of new technology to communicate with its consumers, and at the same time hide behind this technology to avoid liability under consumer protection and privacy laws.

Finally, Heinz sufficiently alleged he did not consent to the recording of his communications. Amazon failed to provide clear and conspicuous notice it was recording customer-service chats, and general references in its Conditions of Use and Privacy Notice are insufficient to establish express or implied consent under Washington law. Indeed, unlike Amazon, several of Amazon's competitors use conspicuous disclosures in compliance with privacy and consumer laws.

Privacy concerns on the internet are surely growing. In contrast, the simple (and inexpensive) act of placing a clear disclosure that the conversational data is recorded could have easily been accomplished. Amazon openly ignores these privacy concerns.[2] For these reasons, and as further detailed below, Heinz respectfully requests that the Court deny Amazon's motion. Should the Court find any deficiencies in the Complaint, Heinz requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a).

---

[2] Plaintiff requested that Amazon place a conspicuous notice that the chats are being recorded. Amazon did not agree.

## II. STATEMENT OF FACTS

### A. Heinz's Claims

In July 2022 through September 2022, Heinz, using his cellular phone, visited Amazon's website and had conversations with Amazon via the live chat feature on its website. Complt., ¶ 10. Live chat features "allow customers to communicate with brands in the same personal and immediate way they interact with friends and family." *Id.*, ¶ 19. Like a telephone conversation, the one-on-one chat conversations were confidential in nature because Heinz did not reasonably expect that they would be recorded without being told. *Id.*, ¶¶ 14-15, 20. At no time during these conversations did Amazon disclose to Heinz that it was recording the conversations. *Id.,* ¶ 10. Amazon, however, did in fact record its conversations with Heinz. *Id.*, ¶ 11.

As one of the largest data aggregators in the world, it is Amazon's practice to record all communications that occur on its website and use the recorded conversations for financial gain. *Id.*, ¶¶ 12, 20. Amazon records the conversational data for a competitive advantage and to use the data as an asset to delve into its customers' online purchase behavior. *Id.*, ¶ 19. Published research has found that some data miners like Amazon secretly use recorded chat conversation for data mining, marketing, and advertising purposes. *Id.*, ¶¶ 18-19. "This rise of business messaging is set to produce a treasure trove of conversational data – chat history and context – that business can begin to use and gain a more complete and personal view of their customers. ***It's the juiciest of low-hanging fruit***." *Id*., ¶ 19 (emphasis added).

The recorded conversations were confidential because at no point did Heinz have a reasonable expectation that any of the conversations with Amazon were being recorded because at no time did Amazon inform Heinz it was recording the conversations. *Id.*, ¶ 21; *see also id.*, ¶¶ 13-16. Heinz and other consumers did not consent to the recordings. *Id.*, ¶¶ 2-3, 9-10, 39, 47, 49, 57-58. In fact, Amazon purposefully concealed that it was recording the conversations between itself on the one hand and Heinz or other members of the class on the other hand. *Id.*, ¶ 31.

The fact that the chats are written does not inform consumers that the chats are recorded. *Id.*, ¶ 22. This is because "chats occur, and then disappear to the user. A live chat user does not know the conversations are being recorded and kept for further use and does not receive or maintain

a copy of the conversation unlike emails and text messages. If one goes back to Defendant's website the conversation is no longer there." *Id.* Further, Amazon did not disclose to consumers, nor did its customers reasonably expect, that the conversational data would be mined for financial gain without informing each customer. *Id.,* 59. Unlike several other prominent websites, there was no pre-conversation notice that the live chats were being recorded and used by Amazon. *Id.*, ¶¶ 22-26. Such warnings are ubiquitous today. *Id.*, ¶ 24-26, 30. A simple advisement that the chats are recorded would have solved this problem but, instead, Amazon has chosen to take advantage of this technology, invade Heinz's and other class members' privacy, and reap the benefits of the free conversational data. *Id.*, ¶ 23.

Amazon's business practices caused Heinz and other consumers economic injury as a result of its unlawful recording practices. *Id.*, ¶ 59. Heinz and other consumers unknowingly gave Amazon their private information and chat logs which have economic value. *Id.*, ¶¶ 52, 59. Indeed, Amazon used the conversational data for financial gain and to train its software without compensation to each consumer. *Id.* Heinz and other consumers also purchase products and services from Amazon, which they would not have done if they had known that Amazon intended to record and "mine" every communication between itself and each consumer for valuable data. *Id.* As the saying goes, "if you're not paying, then you're the product," and Heinz and class members have unwittingly provided valuable conversational and other personal data in return for nothing. *Id.*, ¶ 53. This type of data is estimated to have a price tag. *Id.* (citing published research title *How Much Is Your Personal Data Worth?*). Thus, Heinz brings claims for violation WPA and CPA on behalf of a nationwide class to halt this unlawful and intrusive business practice.

**B. Procedural History**

Plaintiff filed his initial complaint in California Superior Court for the County of Yolo on January 11, 2023. On February 15, 2023, Amazon removed the case to the Federal District Court for the Eastern District of California. On May 19, 2023, Amazon moved the Eastern District of California to transfer venue to the Western District of Washington, or in the alternative to dismiss. The Court heard the motion, after full briefing, on July 10, 2023. The Eastern District of California declined to address Amazon's motion to dismiss and transferred venue to the Western District of

Washington. Amazon then filed a renewed Motion to dismiss, making the same arguments it raised in California. The court granted Amazon's motion to dismiss Plaintiff's claims under California law on May 8, 2024, holding that "Washington law controls this dispute" and dismissing the complaint.

Thereafter, Plaintiff filed this putative class action lawsuit on May 22, 2024, bringing claims under Washington state law. (ECF No. 1). In response, Amazon filed the instant motion to dismiss on September 24, 2024. (ECF No. 16).

## III. AMAZON'S MOTION TO DISMISS SHOULD BE DENIED

### A. Plaintiff Sufficiently Alleged Privacy and Financial Injuries

#### 1. Plaintiff has Adequately Pled Economic Injuries Sufficient to Support Claims under both the WPA and CPA

Amazon argues that Heinz has failed to allege an economic injury necessary to support claims under the WPA and the CPA, asserting that Heinz's privacy injury does not amount to a loss of business or property. This argument misconstrues both the scope of injury recognized under Washington law and the nature of Plaintiff's allegations. Plaintiff has, in fact, sufficiently pleaded an economic injury by alleging that the unlawful recording of his communications deprived him of valuable personal data, diminished the economic value of his information, and resulted in a loss of benefit in his commercial transactions.

The CPA broadly prohibits unfair or deceptive business practices and requires a plaintiff to demonstrate an injury to "business or property." *Hangman Ridge v. Safeco Title*, 105 Wn. 2d 778, 780 (1986). The WPA only requires injury to a person's business, person, or reputation. Wash. Rev. Code § 9.73.060. The injury does not "need to be great" and only "some evidence, however slight" is enough. *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists*, *Inc*., 64 Wash. App. 553, 563 (1992). Courts interpreting the CPA have held that this requirement is met when the plaintiff shows any measurable loss of money or property resulting from the defendant's unfair practices. *See id.* Contrary to Amazon's contention, personal data, when collected or used unlawfully, is a loss of property within the meaning of the CPA and WPA.

Here, Heinz alleges his personal data, including valuable conversational and personal information, was unlawfully recorded by the Amazon without his consent. Compl. ¶¶ 29, 59. This

deprivation of his data—data that has inherent economic value in today's digital economy—constitutes a loss of property. *Id.*, ¶ 53. Courts have increasingly recognized that personal data, particularly in commercial transactions, has real value. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (noting that personal information has economic value and plaintiffs had a property interest in their data). Such allegations readily meet the injury pleading requirements under the CPA and WPA. "The injury involved need not be great, but it must be established." *Hangman Ridge*, 105 Wn. 2d at 792. "The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason v. Mortgage America, Inc.*, 114 Wn. 2d 842, 854 (1990). Washington courts have held that a finding that a plaintiff was "inconvenienced, deprived of the use and enjoyment of his property" in connection with the sale of a defective vehicle was sufficient to hold that the plaintiff "suffered injuries for purposes of the Consumer Protection Act." *Tallmadge v. Aurora Chrysler Plymouth*, 25 Wn. App. 90, 94 (1979); s*ee also Panag v. Farmers Ins. Co. of Washington* , 166 Wash.2d 27, 57 (2009) ("the injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal"). Therefore, Plaintiff's allegation of data collection without compensation is sufficient to establish injury to property under the CPA and WPA.

Courts have held that the value of data can be a basis for economic injury, especially in the context of transactions where personal information is improperly obtained. In *Klein v. Facebook, Inc.*, the court recognized that the unlawful collection and use of personal data constitutes an economic injury under consumer protection laws. *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 786 (N.D. Cal. 2022) (applying California law). While *Klein* is a California case, it is persuasive authority for interpreting the scope of injury under consumer protection statutes like the CPA, as both laws serve similar purposes in protecting consumers from unfair practices. Numerous courts have recognized that plaintiffs who lose personal information have suffered an economic injury. *Id.*, 803 ("Consumers have adequately alleged that, by providing Facebook with their information and attention, they 'lost money or property.'") (quoting *Brown v. Google LLC*, No. 20-CV-03664-LHK,

2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021)); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* , 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.* , No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (holding that plaintiffs had adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem, Inc. Data Breach Litig.* , No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (concluding that the plaintiffs had plausibly alleged injury from the loss of value of their personal information).

Amazon's reliance on cases like *Saeedy v. Microsoft Corp*., 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) is misplaced. *See* Mtn. at 6. The information collected by the defendant in *Saeedy* was not private, personal information, but rather browsing history which was not linked to those plaintiffs. *Saeedy v. Microsoft Corp.*, 23-cv-1104, 8 (W.D. Wash. Dec. 21, 2023) ("Plaintiffs have not alleged that they provided any personal or sensitive information to Microsoft that implicates a protectable privacy interest."). Similarly, *Popa* involved website browsing history—not one-on-one private conversations like here. *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456, at *1 (W.D. Wash. Oct. 24, 2023). *Popa* also involved Pennsylvania law. *Id*. at *2. *Revitch* involved "browsing activity" and not actual conversations. *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). By contrast to the cases cited by Amazon, Heinz has alleged that the data recorded by Amazon was valuable personal information that was taken without compensation and used to benefit Amazon commercially.

In the modern economy, data is a commodity, and the collection of personal data without compensation or consent deprives individuals of its economic value. *See* Complt., ¶¶ 18-19 (citing published research). Plaintiff's allegation that he "provided valuable conversational and other personal data in return for nothing" (*id.*, ¶ 53) directly speaks to this deprivation. As recognized in

*In re Facebook, Inc. Internet Tracking Litig.*, individuals have a property interest in their personal data, and when such data is taken without compensation, they suffer a property loss.

Plaintiff further alleges he would not have purchased from Amazon had he known about the invasive data practices establishes an injury because he was induced to engage in transactions based on deceptive conduct. Compl., ¶ 59. This is precisely the type of harm that the CPA is designed to prevent. "Failure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act due to its inherent capacity to deceive and, in some cases, will even rise to the level of fraud." *Testo v. Russ Dunmire Oldsmobile*, 16 Wn. App. 39, 51 (1976). The fact that Heinz was misled into making purchases satisfies the injury requirement for both the CPA and WPA.

Thus, Plaintiff has adequately alleged an economic injury under both the WPA and CPA by demonstrating the loss of valuable personal data and altered purchasing behavior based on Amazon's unlawful and deceptive conduct.

#### 2. Amazon's Argument that Plaintiff Failed to Allege Injury Under the WPA Ignores Applicable Authority and the Allegations of the Complaint

Amazon argues that an invasion of privacy "without more" is insufficient to meet the statutory injury requirements under the WPA. This assertion misstates the factual allegations. Relying on cases like *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023), and *McKee v. Gen. Motors Co.*, 601 F. Supp. 3d 901 (W.D. Wash. 2022), Amazon contends that Plaintiff fails to demonstrate additional injury to his business, person, or reputation. However, this argument ignores the specific harms alleged by Plaintiff.

First, the plain language of the WPA states: "Any person who […] violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation." Wash. Rev. Code § 9.73.060. Plaintiff has sufficiently alleged tangible harm to his person resulting from Amazon's conduct. The Complaint alleges: "Plaintiff gave Defendant his private information and chat logs unknowingly, which Defendant used to train its staff and software without compensation to Plaintiff" and "Plaintiff and the Class purchased products and services

from Defendant, which they would not have done if they had known that Defendant intended to record and 'mine' every communication between itself and each consumer for valuable data." Compl. ¶¶ 29, 59. Washington courts have recognized such harms as injuries under the WPA.

Thus, Amazon's reliance on *Jones* and *McKee* is errant. First, in *Jones,* the plaintiffs alleged that "private communications were unlawfully recorded from Plaintiff Jones's cellphone and permanently stored […] [but not] that Ford actually accessed the personal communications on the vehicle." *Jones*, supra, 85 F.4th 573. There were no further allegations of harm, so the Ninth Circuit concluded the *Jones* plaintiff did not sufficiently allege an injury. Similarly, in *McKee*, the court noted that there were no allegations that "GM utilizes or even has access to the information stored in the infotainment system." *McKee*, 601 F. Supp. 3d at 908. This is in stark contrast to the various, tangible harms alleged by Plaintiff, including Amazon's monetizing and use of such data.

Amazon's argument that an invasion of privacy "without more" is insufficient under the WPA is contrary to the statute's plain language and Washington case law. Here, Plaintiff has alleged specific harms, including loss of personal control over his private information, which was then monetized by Amazon, which is recognized as injuries under the WPA. Amazon's motion to dismiss on this basis should be denied.

### 3. Amazon is Precluded from Raising the Argument Over the "Actual Injury Requirement"

Amazon should also be precluded from raising the argument that Heinz must make a showing of "actual injury" as it contradicts its own previous argument.

A party is precluded from "taking an inconsistent position in the same litigation if (1) the court actually adopted the inconsistent statement earlier in the litigation . . . or (2) the change in the position amounts to playing 'fast and loose' with the court." *Gen. Signal Corp v. MCI Telecomms. Corp.*, 66 F3d 1500, 1505 (9th Cir. 1995); *see also Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001); *Britton v. Co-op Banking Group*, 4 F.3d 42, 744 (9th Cir. 1993). In this case, both prongs are met, and Amazon should not be permitted to argue that Plaintiff must make a showing of "actual injury".

Regarding the first prong, before the Eastern District of California, Amazon admitted in open court that Washington law "provides the same relief that the plaintiff seeks in this case. It does not require actual injury." Straub Decl., Ex. A at p. 8, lines 13-14. Judge Shubb adopted Amazon's position. *See Heinz v. Amazon.com, Inc.*, No. 2:23-CV-00282 WBS AC, 2023 WL 4466904, at *4-5 (E.D. Cal. July 11, 2023). Amazon is therefore precluded under judicial estoppel from arguing to the contrary and California law applies with equal force as Washington. *See Hamilton*, 270 F.3d at 782 ("Judicial … precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.").

But even if this Court does not hold that the Eastern District of California adopted Amazon's prior position, it should still hold that Amazon is estopped from arguing that Washington law differs from California law. A defendant cannot play "fast and loose" with the court when it would benefit twice by taking inconsistent positions. *O'Hara v. Teamsters Local 856*, No. C 92-1262 FMS, 1997 WL 1025517, at *3 (N.D. Cal., Feb. 24, 1997). Here, Amazon benefitted from taking the position that Washington and California law do not differ because that position, in part, resulted in the transfer of this action from California to Washington. Amazon will benefit from taking the contrary position because, if this Court agrees with Amazon, it will obtain a dismissal of Plaintiff's claims. Thus, Amazon will benefit twice from taking inconsistent positions, and is playing fast and loose with the Court. *Id.* Amazon should be judicially estopped from doing so. *See Britton*, 4 F.3d at 744.

### B. Plaintiff Adequately Raised Allegations Regarding the Private Nature of the Communications at Issue

Amazon's argument that Heinz fails to allege the requisite "private" communication under the WPA misinterprets both the nature of the communications at issue and the relevant legal standard for determining whether a communication is "private."

Contrary to Amazon's assertions, Washington courts have adopted a fact-specific approach to determining whether a communication is private. Here, the communications between Heinz and Amazon's customer service representatives fall within the scope of the WPA's protections. The WPA does not expressly define "private," but Washington courts have interpreted the term broadly to include communications in which the participants have a reasonable expectation of privacy.

Courts consider several factors in determining whether a communication is private, including "the subjective intention of the parties," "the reasonableness of the participants' expectations," "the duration and subject matter of the communication," and "the role of the nonconsenting party and his or her relationship to the consenting party." *State v. Townsend*, 147 Wn.2d 666, 673-75 (2002). These factors demonstrate that the determination of privacy is highly fact-dependent and cannot be reduced to a simple formula. *Id*. at 673.

"The mere possibility that interception of the communication is technologically feasible does not render public a communication that is otherwise private." *Id.* at 673-74. Washington courts have emphasized that privacy under the WPA depends on whether the person making the communication had a reasonable expectation that the communication would not be recorded. *See State v. Faford*, 128 Wash. 2d 476, 484 (1996); *see also id.* at 485 ("As we have repeatedly emphasized in considering constitutional privacy protections, the mere possibility that intrusion on otherwise private activities is technologically feasible will not strip citizens of their privacy rights."). Here, Heinz has alleged sufficient facts to show that he reasonably expected his communications with Amazon's customer service representatives to be private.

Amazon incorrectly asserts that the customer service chats at issue were "routine conversations between strangers" and thus cannot be considered private. This argument ignores the context in which the communications occurred. Heinz's communications were not random, anonymous conversations with strangers, but rather interactions in which he sought assistance with specific, individual concerns related to his personal transactions with Amazon. Compl. ¶¶ 10, 13. Heinz had every reason to expect that these communications would be confidential, as they were conducted on a secure platform and involved personal information about his purchases, orders, and shipping disputes. The chats occur in real time, and then disappear to the user. *Id.*, ¶ 22. A live chat user does not know the conversations are being recorded and kept for further use and does not receive or maintain a copy of the conversation unlike emails and text messages. *Id.* If one goes back to Amazon's website the conversation is no longer there indicating that it is not recorded. *Id.*

Washington courts recognize that the nature of the relationship between the parties is a key factor in determining whether a communication is private. Here, Heinz's communications were part

of a consumer relationship with Amazon, where confidential and potentially sensitive personal information was being exchanged. Under these circumstances, Heinz had a reasonable expectation that his communications with Amazon would not be recorded without his consent.

The subject matter of the communications also supports the conclusion that the conversations were private. Heinz's chats involved personal information about his transactions with Amazon, including shipping disputes related to products he purchased. The Washington Supreme Court has held that what a consumer "buys" is private and confidential information subject to Washington privacy laws. *State v. Hinton*, 179 Wash. 2d 862, 874 (2014) (quoting *State v. Miles*, 160 Wash. 2d 236, 246 (2007)). Washington courts have also found that communications involving personal information, even when conducted electronically are private under the WPA. In *Roden*, the Washington Supreme Court held that text messages sent via a cell phone were private communications because the sender had a reasonable expectation that the messages would not be recorded. *Roden*, 179 Wash. 2d at 900 ("***Text messages encompass many of the same subjects as phone conversations and e-mails, which have been protected under the act***") (emphasis added). Similarly, Heinz's chats (which are the equivalent of a telephone call on a cell phone) with Amazon contained information that he reasonably expected to remain confidential between him and Amazon's customer service representatives.

The fact that the communications may have been conducted with a chat bot rather than a human representative does not negate the privacy interest in the communications. The Washington Supreme Court holds, "[w]e will not permit the mere introduction of new communications technology to defeat the traditional expectation of privacy in telephone conversations." *State v. Modica*, 164 Wash. 2d 83, 93 (2008) (quoting *Faford*, 128 Wash. 2d at 486). "We have repeatedly held that the mere possibility that intrusion on otherwise private activities is technologically feasible does not strip citizens of their privacy rights." *State v. Christensen*, 153 Wash. 2d 186, 193 (2004).

The WPA focuses on the expectations of the participants, not the nature of the recipient. As long as Heinz reasonably expected his communications to remain private, the use of new technology does not negate Plaintiff's expectations. "In the context of new communications technology, we have continually held that the mere possibility of intrusion will not strip citizens of their privacy

rights" *Roden*, supra, 1187; *see also* RCW 9.73.030(1)(a) (protecting "[p]rivate communication transmitted by telephone, telegraph, radio, or ***other device*** . . ." (emphasis added). Based on the WPA's broad language, the Washington Supreme Court "has consistently extended statutory privacy in the context of new communications technology, despite suggestions [by companies] that we should reduce the protections because of the possibility of intrusion." *Hinton*, 179 Wash. 2d at 872. "The sustainability of [Washington's] broad privacy act depends on its flexibility in the face of a constantly changing technological landscape. We will not permit the mere introduction of new communications technology to defeat the traditional expectation of privacy in telephone conversations." *Faford*, 128 Wash. 2d at 485–86.

Amazon relies on *State v. Clark*, 129 Wn.2d 211 (1996), and *Kadoranian by Peach v. Bellingham Police Dep't*, 119 Wn.2d 178 (1992), to argue that Heinz's communications were not private. Both cases are factually distinguishable. In *Clark*, the court found that conversations involving illegal drug sales between strangers on the street were not private because the defendants "had no concern for who" they were speaking to, and the conversations were routine, open discussions that the defendants would have shared with any other potential purchaser. *Clark*, 129 Wn.2d at 227-28. By contrast, Heinz's communications were specific to his personal transactions with Amazon and were conducted in a secure, individualized context. Heinz had no reason to believe his communications would be accessible to anyone other than Amazon's customer service representatives.

Similarly, in *Kadoranian*, the court held that comments made to a police officer were not private because they were "inconsequential" and "made to a stranger." *Kadoranian*, 119 Wn.2d at 191. Here, Heinz's communications with Amazon were not inconsequential or made to a stranger in the same sense. Heinz was engaged in a transaction-specific dialogue about issues that were directly relevant to his business with Amazon. Unlike *Kadoranian*, Heinz's communications contained personal and potentially sensitive information about his purchases and shipping details, which he reasonably expected to be kept private.

Heinz has sufficiently alleged that his communications with Amazon were private under the WPA. The subjective expectation of privacy, the context of the communications, and the nature of

the relationship between Heinz and Amazon all support the conclusion that these chats were protected under Washington law. Amazon's attempt to characterize these communications as "routine" and "public" fails to account for the factual nuances of the case and the broad protections afforded by the WPA. At best, Amazon raised an issue of fact regarding whether the communications at issue can be considered private. Such a factual dispute cannot be resolved through a motion to dismiss. *Christensen*, 153 Wash. 2d at 192.

For these reasons, Amazon's motion to dismiss should be denied.

**C. Amazon Misstates the WPA Requirements of "Two or More Individuals", Which Plaintiff Met**

Amazon contends that Plaintiff's claim under the WPA fails because Plaintiff's interactions with Amazon's chat bots do not satisfy the statutory requirement that communications involve "two or more individuals." Amazon argues that automated systems, like chat bots, do not qualify as individuals, and thus, Plaintiff's communication with these bots cannot constitute a violation of the WPA. However, Amazon's interpretation of RCW 9.73.030(1)(a) misapplies both the statutory text and relevant case law.

To begin, Plaintiff's allegations are that he: "had conversations with Defendant via the chat feature on Defendant's website." Compl. ¶ 10. Thus, Amazon's position these communications were solely between Plaintiff and a chat bot misconstrue the allegations at issue. Plaintiff did not send messages to a chat bot in a vacuum—these were sent via the chat feature on Amazon's website, with the understanding that these would reach other individuals (e.g. Amazon's employees and/or agents).

RCW 9.73.030(1)(a) prohibits the recording of any private communication "by any device designed to record or transmit such communication … without first obtaining the consent of all participants." Although the statute refers to "individuals," Washington courts have interpreted this requirement broadly, to encompass communications involving automated systems when the user reasonably believes they are engaging in a communication intended to remain private. Furthermore, Washington courts have not required strict person-to-person communication to satisfy RCW 9.73.030(1)(a).

Washington courts have recognized that the WPA applies broadly to protect individual privacy, even in cases involving new technology as long as the communication contains a reasonable expectation of privacy. It bears repeating that Washington jurisprudence holds that "[i]n the context of new communications technology, we have continually held that the mere possibility of intrusion will not strip citizens of their privacy rights" *Roden*, supra, 1187. In holding that text messages are subject to the protection of the WPA, Washington's Supreme Court considered that: "[s]ophisticated text messaging technology enables "[l]ayered interpersonal communication[s]" that reveal "intimate ... thoughts and emotions to those who are expected to guard them from publication."" *Id*; *see also In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015) ("Plaintiffs may base their Washington Privacy Act claim on the alleged interception of text messages and phone numbers dialed and received.").

Following Amazon's logic, a text message would not be covered by the WPA because a text message is sent to a phone, rather than "two or more individuals"—which is clearly not the case. Amazon cannot hide behind its chat bot. Amazon's argument goes against established WPA precedent and should be rejected.

Furthermore, in *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit affirmed that privacy claims could proceed where individuals' communications were recorded by automated systems without consent, acknowledging that these interactions fall within the scope of privacy laws. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Plaintiffs have plausibly alleged that Facebook did not disclose that the cookies would continue to track users' browsing history after they log out of the platform. Nor did it disclose the extent of information collected […] Plaintiffs have adequately alleged a reasonable expectation of privacy.")

Amazon cites *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116 (W.D. Wash. 2012), which found that location data transmitted from a phone did not constitute a protected communication under the WPA. *Cousineau* is distinguishable from the present case, as it involved passive data transmission rather than active communications drafted and sent by the plaintiff to the defendant. *Cousineau*, 992 F. Supp. 2d at 1120 ("Cousineau claims that even when she denied access by clicking "cancel," her geolocation information was still transmitted to Microsoft.").

Unlike in *Cousineau*, Plaintiff here was actively engaged in a communication via Amazon's chat function, which is functionally analogous to a human customer service representative. Therefore, *Cousineau* does not preclude Plaintiff's claim.

Amazon's argument, if accepted, would create a loophole in the WPA's protections, allowing companies to evade liability by employing automated systems in place of human representatives. This approach would contravene the broad privacy protections intended by the WPA. As such, Amazon's motion should be denied.

**D. Plaintiff Sufficiently Pled Lack of Consent Under Both the WPA and CPA**

Amazon argues that Plaintiff expressly consented to the recording of his communications with Amazon by placing hyperlinks to its Conditions of Use ("COUs") and Privacy Notice on its website. However, under Washington law, consent to recording must be both clear and specific to satisfy the WPA. RCW 9.73.030(3) ("consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted"). Washington courts "generally presume that conversations between two parties are intended to be private." *State v. Modica*, 164 Wn. 2d 83, 89 (2008).

Here, there is no disclosure at all on the chat function. *See* Copl., ¶ 23 (image of chat function). Moreover, the COUs and Privacy Notice do not explicitly state that communications on Amazon's chat function will be recorded. Rather, the Privacy Notice vaguely refers to Amazon "receiving and storing" information (*see* Mtn. at 10), which is insufficient to establish express consent to recording under the WPA.

Amazon's reliance on the fact specific inquiry in *Townsend* is misplaced. *See* Mtn. at 10-11. *Townsend* involved emails and a software messaging service called ICQ which the criminal defendant, Townsend, used to commit the rape of a child. *Townsend*, 147 Wash.2d at 670-71. Critically, there was a recording disclosure "that specifically warned users" that the software allows "to record the content of the session" and that the program utilized a default "set to record" setting. *Townsend*, 147 Wash.2d at 677. Thus, unlike Amazon's vague privacy policy here (see immediately below), Townsend was explicitly warned that the messages would be recorded. Further, the court

in *Townsend* noted that "[w]hether the ICQ communication is saved for a longer period of time depends on the computer software used by the recipient." *Id.* at 677. The court also noted "that Townsend encouraged the recipient of his ICQ messages, the fictitious Amber, to set up an ICQ account strongly suggests" that Townsend knew about the recording of the messages. *Id.* at 678.

Here, there are no specific facts that Heinz knew that Amazon recorded and later used the data for financial gain, and there is no warning the live chats are recorded. Also, unlike emails, the chats occur and disappear to the user. A live chat user does not know the conversations are being recorded and kept for further use and does not receive or maintain a copy of the conversation unlike emails and text messages. If one goes back to Amazon's website the conversation is no longer there.

Moreover, Amazon's Privacy Policy is entirely too vague to put a consumer on notice of Amazon recording and data mining practices. Amazon's Privacy Notice does not contain such a specific disclosure. It merely states that Amazon may "receive and store" information, which does not indicate that real-time chat communications are subject to recording. Without an explicit warning or notification that chat communications would be recorded, there is no basis for finding implied consent. Here, if a user was to click on the hidden Privacy Notice hyperlink when they sign in, create an account, or make a purchase, he would be confronted with 9 pages of single-space text which contains 3,479 words, 161 paragraphs, and 393 lines. Straub Decl., ¶ 8. The Privacy Notice contains an overwhelming 74 embedded hyperlinks. *Id.* A search for "recordings" in the Privacy Notices results in sentences which are unrelated to the chats: "voice recordings when you speak to Alexa." *Id*. This is insufficient to put consumers on notice that the chat conversations were recorded by Amazon and then data mined by Amazon as Hienz alleges. *See e.g.*, *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising.").

It is binding law in the Ninth Circuit that a browse-wrap agreement is neither conspicuous notice nor an enforceable agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77

(9th Cir. 2014) ("Unlike a clickwrap agreement, a browse wrap agreement does not require the user to manifest assent to the terms and conditions expressly"). "[M]erely clicking on a button on a webpage . . . does not signify a user's agreement to anything." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022). Similarly, sign-in wrap agreements are subject to binding precedent holding an inconspicuous hyperlink in small point font does not suffice as a manifestation of consumer assent to its terms. *Id.*; *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 466 (2021). For similar reasons as argued above regarding conspicuous notice, Heinz cannot be bound by the Privacy Notice as a basis for his "consenting" to have his chat conversations recorded.

For these reasons, Amazon's argument fails to demonstrate that Plaintiff gave either express or implied consent to the recording of his communications with Amazon. Accordingly, Plaintiff's claim under the WPA should proceed, as the requisite element of "lack of consent" is adequately alleged in the Complaint. Amazon's Motion to Dismiss should therefore be denied.

**F. Heinz's CPA Claims Are Well-Pled and Sufficient to at the Pleadings Stage**

Amazon argues Plaintiff's claim under the CPA should be dismissed due to alleged deficiencies in pleading an unfair or deceptive act, as well as causation. Again, Amazon's contentions misinterpret the factual allegations and applicable law.

Amazon first argues that Plaintiff has failed to allege an unfair or deceptive act because Amazon disclosed its data collection practices in its Privacy Notice. However, under Washington law, even partial disclosures can be deemed unfair or deceptive if they are misleading in a manner likely to deceive a reasonable consumer. The standard for an unfair or deceptive act under the CPA is whether the act had the capacity to deceive a substantial portion of the public. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785 (1986) ("A plaintiff need not show that the act in question was intended to deceive, but that the alleged act had the capacity to deceive a substantial portion of the public.") In *Panag*, the court emphasized that even where some disclosures are made, the CPA may be violated if the disclosures are misleading or incomplete. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 55 (2009) ("the debtor who receives a letter masquerading as a bona fide collection notice from a regulated collection agency may be lulled into believing he or she is protected by the regulations generally applicable to debt collection."). Indeed,

the Supreme Court of Washington held that the CPA is to be interpreted broadly in order to curb novel methods of unfair or deceptive practices: "By broadly prohibiting 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' RCW 19.86.020, the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation." *Id*. at 49.

Plaintiff's Complaint alleges that Amazon recorded his customer-service chats without adequate disclosure. While Amazon claims its Privacy Notice adequately disclosed these practices, Plaintiff contends that this disclosure was misleading, as it did not clearly or explicitly inform users that real-time customer-service chats would be recorded. *See* Straub Decl., ¶ 8. Amazon's reliance on cases such as *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 119 (2001), is inapposite, as these cases involved fully disclosed practices that a reasonable consumer would have understood. *Id.* at 121 (noting "each of the rental contracts ***the consumers signed clearly itemized the fee***") (emphasis added). Here, the disclosure is incomplete and misleading, as it does not clearly address the recording of real-time conversations with Amazon's chat function, which has the capacity to deceive a substantial portion of the public.

Additionally, the practice can be deemed unfair because consumers could not reasonably avoid the harm. As the court in *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013), noted, a practice is unfair under the CPA if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves." Plaintiff's reliance on Amazon's chat service is a reasonable action given the convenience and common usage of such services, and it is not reasonably avoidable harm when the full scope of data recording is not adequately disclosed.

Amazon also argues that Plaintiff has failed to show causation under the CPA, asserting that Plaintiff's alleged injury—based on the recording of customer-service chats—is unrelated to any purchase decisions. However, the CPA does not require that the unfair or deceptive act directly relates to the transaction itself; rather, it requires a showing that the deceptive practice had an impact on the consumer's decisions. In *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,

162 Wn.2d 59, 84 (2007), the court clarified that the causation standard for the CPA is whether "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

Plaintiff has adequately alleged that, had he been aware of Amazon's undisclosed recording practices, he would not have engaged with Amazon's customer service in the manner he did. Compl., ¶ 59. This is sufficient to establish causation under the CPA. Contrary to Amazon's assertions, Plaintiff's injury arises from the deceptive practice itself—Amazon's undisclosed recording—not from the nature of the customer-service inquiries or subsequent purchases. Furthermore, the allegations in Plaintiff's Complaint plausibly support the notion that he would not have consented to the communication or entrusted Amazon with personal information had he been fully informed of its recording practices. *Id.*

Amazon's reliance on *Kotok v. Homecomings Fin., LLC*, 2009 WL 2057046 (W.D. Wash. July 14, 2009), is misplaced because, in that case, the court dismissed a CPA claim where documents in the complaint clearly contradicted the plaintiff's assertions. *Id.* at *4 ("Here, the loan documents referenced in Plaintiffs' complaint and submitted by Defendants clearly belie Plaintiffs' contentions."). Here, in contrast, Plaintiff's allegations are consistent with the notion that Amazon's disclosures were incomplete or misleading, and there is no contradiction in the pleadings that would undermine the causal link between the deceptive practice and Plaintiff's alleged harm.

For these reasons, Plaintiff has adequately plead the elements of an unfair or deceptive act or practice, and causation under the CPA. The Complaint alleges a practice that has the capacity to deceive, particularly given the incomplete nature of Amazon's disclosures, and that Plaintiff suffered harm as a result of this deception. Accordingly, the Court should deny Amazon's motion to dismiss Plaintiff's CPA claim.

## IV. CONCLUSION

The Court should deny Amazon's Motion to dismiss. If the Court grants any aspect of Amazon's Motion, Heinz requests leave to amend. *See* Fed. R. Civ. P. 15(a).

Dated: October 25, 2024

Respectfully submitted,

By: */s/ Zachary M. Crosner*
ZACHARY M. CROSNER

Zachary M. Crosner (WA SBN 61644)
Craig W. Straub (CA SBN 249032)
(*pro hac vice forthcoming*)
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
zach@crosnerlegal.com

Adrian R. Bacon (CA SBN 280332)
(*pro hac vice forthcoming*)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
abacon@toddflaw.com

*Attorneys for Plaintiff and all others similarly situated*

**Local Civil Rule 7(e) Certification**

I certify that this memorandum contains 7,692 words (including footnotes), in compliance with the Local Civil Rules.

By: _/s/ __*Zachary M. Crosner*_____
ZACHARY M. CROSNER